# Crock's Estate.

*Will—Construction—Repugnancy—Intestacy.*

Testator divided his residuary estate after the death of his wife in ten parts, seven of which he gave absolutely to seven of his children, and the remaining three in trust for life for two daughters and one son. The gift in trust to the son G. provided as follows: "And at and immediately upon his decease out of the said one-tenth . . . . the sum of $2,000 thereof to go to G's son, C., if he be then living . . . . and all the rest, residue and remainder of the said one-tenth part, the same to include the said sum of $2,000, should he the said C. depart this

life before his father to revert to and become part of my residuary estate." By a later clause testator directed as follows: "It is my mind and will that should any or either of my said daughters or sons for whom provision has been made through my said executors as trustees, shall happen to depart this life without leaving any child or children or lawful issue of any deceased child or children him or her surviving then and in such case and in every such case the part and share of my estate so devised in trust for him or her shall upon his or her decease revert to and become part of my residuary estate." *Held*, that C., surviving G., was entitled to $2,000 only out of the one-tenth bequeathed in trust to G. for life, and that the balance of said one-tenth was distributable in equal ninth parts to the testator's surviving children.

Argued Jan. 20, 1911. Appeal, No. 94, Jan. T., 1910, by Amelia Crock, executrix, from decree of O. C. Phila. Co., April T., 1887, No. 520, dismissing exceptions to adjudication in Estate of George Crock, Sr., deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in dismissing exceptions to adjudication.

*V. Gilpin Robinson*, with him *John G. Kaufman*, for appellant.—The reverter clause in the trust for George Crock, Jr., is inconsistent with and repugnant to the other portions of the will, wherein the general scheme of the testator is disclosed, and it must be eliminated: German v. German, 27 Pa. 116; Stickle's App., 29 Pa. 234; Hart v. Stoyer, 164 Pa. 523; Shreiner's App., 53 Pa. 106; Ferry's App., 102 Pa. 207; Horwitz v. Norris, 60 Pa. 261; Hitchcock v. Hitchcock, 35 Pa. 393; Schott's Estate, 78 Pa. 40; Sheetz's App., 82 Pa. 213; Jones's App., 3 Grant (Pa.), 169; Jarman on Wills, 438.

Conceding for argument's sake only, that there is no inconsistency or repugnancy in Crock's will, an intestacy must result under the reversionary clause in the trust for George Crock, Jr.

There was a conditional gift over limited upon a particular contingency. The event did not happen, but another event actually happened, not provided for by the testator, therefore, and intestacy resulted: Eby v. Eby, 5 Pa. 461; Filbert's Est., 195 Pa. 295; Shaner v. Wilson, 207 Pa. 550; Rupp v. Eberly, 79 Pa. 141; Skrymsher v. Northcote, 1 Swanston, 566; Beekman v. Bonsor, 23 N. Y. 298; Waln's Est., 156 Pa. 194; Nebinger's Est., 185 Pa. 399; De Silver's Est., 142 Pa. 74; Heckert's Admr. v. Myers, 24 York Leg. Rec. 85.

The title of the heir under the intestate laws cannot be divested unless by a will which contains express words or necessary intendment to that effect: Corr's Est., 202 Pa. 391; De Silver's Est., 142 Pa. 74; Hitchcock v. Hitchcock, 35 Pa. 393; Grim's App., 89 Pa. 333; Abel v. Abel, 201 Pa. 543.

If there is an intestacy as to any part of the dispositions contained in the will, the heirs are to be ascertained as of the date of the death of the testator, unless there is some other plain indication. George Crock, Jr., was an heir, and his will, duly proved, devised and bequeathed all his estate to the appellant: Stewart's Est., 147 Pa. 383; Bell's Est., 147 Pa. 389; Brooke's Est., 214 Pa. 46; Moore v. Deyo, 212 Pa. 102; De Silver's Est., 142 Pa. 74.

*John G. Johnson*, with him *Maurice Bower Saul*, for appellees.—There was no intestacy: Raudenbach's App., 87 Pa. 51; Miller's App., 113 Pa. 459; Reimer's Est., 159 Pa. 212; In re Allan, L. R. 1 Ch. Div. (1903) 276; Crawshaw v. Crawshaw, L. R. 14 Ch. Div. 817.

OPINION BY MR. JUSTICE STEWART, April 10, 1911:

The testator having given his entire estate to his wife for life, directed that upon her death the estate should be divided into ten equal parts. To each of seven named children he gave a one-tenth absolutely, the remaining three-tenths he placed in trust, one for each of his two daughters named, and one for his son George, with express

limitations as to each. We are here concerned only with the share placed in trust for George during life. The gift to him was the net interest and income of a one-tenth during his life, followed by this provision: "And at and immediately upon his decease out of the said one-tenth part so devised and bequeathed for his benefit during life, the sum of two thousand dollars thereof to go to and I do give and bequeath the said sum unto his the said George's son Charles Crock if he be then living, to be disposed of by him as his own absolutely. And all the rest residue and remainder of the said one-tenth part the same to include the said sum of two thousand dollars, should he the said Charles Crock depart this life before his father, to revert to and become part of my residuary estate." George died in March, 1909. Charles having survived his father has been awarded his legacy of $2,000. George by his will gave his entire estate to his wife, and constituted her executrix. She is now here appealing from an adjudication awarding the balance of the trust fund in equal ninth parts to the surviving children and the trustees of surviving children, and the legal representatives of those deceased, excluding the legal representative of the son George from participation. The claim made on her behalf is that there is an intestacy as to so much of this one-tenth as remained after the payment of the legacy to Charles. The argument in support of this view would derive from the will an intention on part of the testator to effect a reversion only in the event of Charles dying in the lifetime of his father. If the inquiry be confined to the particular clause of the will above quoted, the construction contended for would have nothing to support it. That the contingency of Charles dying in the lifetime of his father was in the testator's mind when he wrote this provision, is manifest, since he provided against it, directing that in that event the whole fund, including the $2,000 legacy, was to revert to the residuary estate. The language employed in this clause expresses unmistakably a definite purpose that upon the death of George the portion placed in trust for him should revert to

the estate. The contention is not that it can be otherwise interpreted, but that the testator did not mean what he said; and an inference to this effect is sought to be derived from a later clause in the will which reads as follows: "It is my mind and will that should any or either of my said daughters or sons for whom provision has been made through my said executors as trustees, shall happen to depart this life without leaving any child or children or lawful issue of any deceased child or children him or her surviving then and in such case and in every such case the part and share of my estate so devised in trust for him or her shall upon his or her decease revert to and become part of my residuary estate." It is argued that here is a repugnancy; that these two provisions cannot be read with the same result, and that by the reflected light from the later clause, it is made apparent that what testator meant in the earlier clause was a reversion in case George died without issue surviving him. But there is no repugnancy. George dying without issue surviving him, under both clauses the share given in trust for him would revert to and become part of the residuary estate; dying and leaving issue, of such issue Charles only was to take, and that only to the extent of the legacy of $2,000, and the balance was to fall into the residuary estate. What considerations influenced the testator to make this distinction between the issue of George and the issue of his other children we do not know, nor does it concern us to inquire. He thought it wise and best to make the distinction, and he has expressed it in no uncertain way. We find nothing in the later clause conflicting with the earlier, and nothing which in any way qualifies it. It is further argued in support of appellant's contention that under the later clause, a gift to the issue of such of testator's children as were provided for through trustees—George being in this class—arises by implication from the gift over upon default of issue, and that such contingency did not happen, but that another event happened not provided for by the testator, and intestacy accordingly resulted as to all but the $2,000 given to Charles.

This argument overlooks the fact that in the earlier provisions of the will, the gifts, which would here be derived by implication, were specifically ordered and directed. Upon the death of testator's daughter Elizabeth, the share given her for life was given, devised and bequeathed "unto all and every child and children of her the said Elizabeth that shall be living, and the lawful issue of such of them as shall then be deceased." There was the same gift over in the provision made for the other daughter. Upon the death of George $2,000 out of the fund he enjoyed for life was given to his son Charles, and the remainder was to become part of testator's residuary estate. These specific devises and bequests left nothing to be implied; they stand in the way of implication, and cannot be so overcome or defeated. Even were it otherwise, it could avail this appellant nothing, for as said by the auditing judge, in that case, Charles, son of George, who is not an exceptant, would take the entire interest, and the appellant nothing. But, aside from all this, we find nothing in the will that gives support to the theory of intestacy as to any portion of the estate. It is so clearly a disposition of the testator's whole estate that it requires no aid from legal presumptions to sustain it in this regard. Since there is no intestacy, and the fund for distribution has reverted and become part of the residuary estate, how is it to be distributed? If the testator has indicated in his will the mode and manner, that is the law which must govern. The portion that has reverted is what was given George for his life. Out of this portion, upon George's death, he gave to George's only surviving child, Charles, and therefore the only one who stood in succession to George, $2,000. Could he have intended that in addition, those representing George should share equally with the other nine in what remained? Nothing short of a clear expression of such intent would overcome the inference that he intended that what remained was to be distributed among his other legatees. As we read this will it shows a clearly defined purpose in the testator to deny to George's child any and all

participation in the estate, including the rest, residue and remainder, other than that specifically and in terms given them. The adjudication divides the fund between the nine residuary legatees to the exclusion of George's representatives, and in doing so properly interprets the will.

The assignments are overruled, and the appeal is dismissed.