## Onderdonk's Estate.

*Wills—Codicils—Construction of will and codicil—"Surviving" referred to death of life-tenant.*

1. Testator died March 17, 1917, leaving two brothers, Charles and George, and three sisters, Eudora, Mary and Cynthia, and by his will dated May 20, 1887, he gave his residuary estate to his brothers and sisters, and directed that the shares of George and his sisters should be held in trust until the expiration of twenty-one years from the death of the survivor of them, the income to be paid to all of them, share and share alike, and in case of the death of any of them leaving issue, the issue to be paid the share of the income that their parents would have taken if living, and in case of the death of any them without leaving descendants, the shares of the principal, the income of which had been paid to the beneficiary, to be divided equally among all the brothers and sisters then living and the issue of any that might be deceased, the issue taking their parent's share; the shares of George or his sisters, or the descendants of any of them that might be deceased, to be continued to be held in trust in aggregation with the other shares held for them upon the same trusts and with the same powers. At the expiration of twenty-one years after the death of the last survivor, the principal was directed to be divided among the brothers and sisters then living of George and his sisters *per stirpes.* By codicil No. 1, dated Jan. 4, 1893, the testator directed that upon the decease of Mary, one-half of her share should be divided among his surviving brothers and sisters, to be held under the same trust as the original shares and subject to the same conditions, and that the remaining one-half should go to her only child, F. Percy Vail, to be held in trust as provided in the will. By codicil No. 2, dated Dec. 7, 1909, he revoked the share given to George and bequeathed to his executor $15,000 in trust, to pay the income to George during his life, and on his death directed said sum to become a part of the residuary estate. By codicil No. 3, dated Nov. 10, 1914, he revoked the share given to Charles and bequeathed the same to his executor, in trust for Charles, under and subject to all the terms and conditions contained in the will relative to George and his sisters, to pay the income to Charles during his life, and on his death he directed the trustee to hold $5000 in trust, to pay the income to Charles, Jr., son of said Charles, and on his death to divide the $5000 among any children he might leave surviving, and should he leave no children surviving, "then the said $5000 shall be paid to my residuary estate." He provided similar trusts of $5000 each to Laura, who predeceased him without issue, and to Margaret, children of Charles, testator's brother. After providing for these trusts, testator directed that "the balance of said share held in trust" for his brother should be paid to his residuary estate. By codicil No. 2 he ratified and confirmed his will and codicil No. 1 in every particular, except where the same was thereby revoked or altered; by codicil No. 3 he ratified, confirmed and republished his will and the two other codicils, except where they were revoked or altered. Charles survived Eudora and died March 21, 1924, leaving two children: Charles S., Jr., and Margaret O. Hickey. Mary, testator's sister, died July 3, 1924, leaving one child, F. Percy Vail. The trustee thereupon filed two accounts, one of the trust estate of Charles and the other of the trust estate of Mary. The auditing judge, in the account of Charles's estate, awarded $5000 in trust for Charles, Jr.; $5000 in trust for Margaret O. Hickey; and the residue to the trustee in trust, the income being awarded to the trustee to pay one-fourth to George, one-fourth to Cynthia, one-fourth to Mary and one-fourth to the children of Charles. Charles's children excepted, on the ground that they were entitled to the entire income. Cynthia and F. Percy Vail excepted, on the ground that Charles's children should have been excluded. *Held*, that the children of Charles should have been excluded.

2. In regard to the account filed in Mary O. Vail's estate, the auditing judge awarded the fund to the trustee, to pay half the income to F. Percy Vail for life and the other half to Cynthia and George, holding that the direction in the first codicil to divide one-half of the fund among testator's surviving brothers and sisters, to be held under the same trusts as the original shares and subject to the same conditions, meant those who should survive. Mary O. Vail, as distinguished from those who had survived the testator. On exceptions: *Held*, no error.

Exceptions to adjudication. O. C. Phila. Co., April T., 1918, No. 587.

John P. Onderdonk died March 17, 1917, leaving a will dated May 20, 1887, which contained the following residuary clause:

"All the rest residue and remainder of my estate real and personal whatsoever and wheresoever the same may be I give, devise and bequeath unto my brothers and sisters living at the time of my decease, and the issue of any deceased brother or sister, their heirs, executors and administrators share and share alike, such issue taking however only their parents share. But as respects the shares and proportions of my brother George V. Onderdonk and my sisters then living, I will and direct that they shall be held by my Executors hereinafter named, In Trust, to be continued in the investments I may have made, with power to change the same from time to time as they may deem wise and judicious and to reinvest in other productive securities without being confined to such as are known as legal investments securities until a period of twenty-one years after the decease of the last survivor of my said brothers and sisters. To collect the income thereof and pay over the same quarterly to my said brother and sisters during their respective lives, adjusted as aforesaid in case the share of my brother George shall be charged with money due me at the time of my decease, share and share alike, and in case of the death of either of them leaving lawful issue him or her surviving, such issue shall be paid the share of income their parents would have taken if living; the said income [not] to be subject to any anticipation, alienation or disposal by their own acts, or any act of law, nor to any debts, contract or engagements made by them, nor to any attachment or execution in any way whatsoever. But in case of the death of either of them without leaving lawful issue or descendants, him or her surviving, or leaving such they shall die before the said period for the termination of this Trust then in such case I will and direct that the share of the principal, the income of which was paid to him, her or them, shall be divided and paid equally to and among all my brothers and sisters then living, and the lawful issue of any that may be deceased, such issue taking however only their parents share, and the shares falling to my brother George V. Onderdonk or sisters or descendants of either of them that may be deceased, to continue to be held in Trust in aggregation with the other shares held for them, upon the same trusts and with the same powers.

"And upon the expiration of the said period of twenty-one years after the death of the last survivor of them, to divide the principal of said trust fund or estate into as many parts or shares as there shall be sisters of mine and said brother then dead represented by descendants then living, and to subdivide each share falling to each set of descendants of such dead sister and brother amongst them *'per stirpes'* upon the principle of representation, and to pay over assign and convey to each descendant who shall then be found entitled, its share in fee."

On Jan. 4, 1893, he made the following codicil:

Codicil No. 1. "Whereas, I, John P. Onderdonk, of the city and county of Philadelphia and State of Pennsylvania, by my last Will and Testament in writing duly executed bearing date May twentieth Eighteen hundred and eighty-seven, have given and bequeathed to my sister, Mrs. Mary O. Vail, wife of Dr. Duncan O. Vail of New Market, New Jersey, a certain share of my estate, to be held in trust for her, and at her decease, her child to have the same interest therein under the conditions set forth in said will and testament.

"Now I the said John P. Onderdonk being desirous of altering my said Will and Testament in respect to this share, do therefor make this present writing which I will and direct to be annexed as a Codicil to my said Will and Testament, and to be taken as a part thereof. It is my will that one-half (½) of the share bequeathed to my said sister Mrs. Mary O. Vail shall at her decease be divided equally among my surviving brothers and sisters to be

### Onderdonk's Estate.

held in trust, the same as the original division of shares, and subject to the same conditions. The remaining one-half ($\frac{1}{2}$) of said share shall go to her child, to be held in trust as provided in said Will and Testament (not from any ill will or lack of affection is this, but because said child has money to come to him from other sources, while my brothers and sisters have not). . ."

On Dec. 7, 1909, he made a second codicil reading as follows:

Codicil No. 2. "Whereas, I, John P. Onderdonk of the city and county of Philadelphia, State of Pennsylvania, have by my last will and testament in writing duly executed bearing date May twentieth Eighteen hundred and eighty-seven, and a codicil thereto dated January fourth eighteen hundred and ninety-three, given devised and bequeathed to my brother George V. Onderdonk a certain share in my estate to be held in trust for him as duly set forth in said will and testament and said codicil thereto, Now I the said John P. Onderdonk being desirous of altering my said will and testament and said codicil thereto in respect to said share, do, therefore, make this present writing, which I will and direct to be annexed as a codicil to my said will and testament and codicil thereto, and to be taken as a part thereof, and I do hereby revoke and cancel the said share by my said will and testament and codicil thereto given to my said brother George V. Onderdonk and I do hereby give devise and bequeath unto my executor named in my said will, the sum of Fifteen thousand dollars, to be held in trust under all the terms and conditions set forth in the trusts hereinbefore contained in my said last will, and to pay the net income thereof unto my brother George V. Onderdonk for and during the term of his natural life, and upon the death of him the said George V. Onderdonk, I order and direct that the said sum of Fifteen thousand dollars shall then become part of my residuary estate. I do hereby further release him the said George V. Onderdonk from the payment of any moneys which he owes me. I do hereby ratify and confirm my said last will and testament dated May twentieth Eighteen hundred and eighty-seven and the codicil thereto dated January fourth Eighteen hundred and ninety-three in every particular except where the same are hereby revoked cancelled or altered as aforesaid."

On Nov. 10, 1914, he made a third codicil reading as follows:

Codicil No. 3. "Whereas, I. John P. Onderdonk of the city and county of Philadelphia, State of Pennsylvania, have by my last will and testament in writing duly executed, bearing date May 20, 1887, given, devised and bequeathed the rest, residue and remainder of my estate, real and personal, whatsoever and wheresoever, unto my brothers and sisters, living at the time of my decease, and the issue of any deceased brother or sister, their heirs, executors and administrators, share and share alike, such issue, however, taking only their parent's share, but as respects the share and proportion of my sisters and of George V. Onderdonk, I have provided that the same shall be held in trust under the terms and conditions set forth in said will;

"And whereas, I now desire to place in trust the share or portion payable under my said will to my brother, Charles S. Onderdonk, I, therefore, make, publish and declare this as and for a codicil to my said will and annex the same thereto to be taken as a part thereof with the same force and effect as if originally made and written in said will, to wit:

"I do hereby revoke and cancel any part or portion of my said estate given, devised and bequeathed in my said will to my said brother, Charles S. Onderdonk, and I do hereby give devise and bequeath the said share or portion, given to the said Charles S. Onderdonk in my said will, unto my executor and trustee, therein named, to be held in trust for the benefit of my

brother, the said Charles S. Onderdonk, under and subject to all the terms and conditions set forth in the trusts contained in my said will relative to my sisters and George V. Onderdonk and I hereby authorize, direct and empower my executor and trustee to pay over the income of said share or portion to my said brother, Charles S. Onderdonk, for and during the term of his natural life, not subject to any anticipation, alienation or disposal by his own act or of law, nor to any deed, contract or engagement made by him nor to any attachment or execution in any manner whatsoever, and immediately upon and after the death of my said brother, Charles S. Onderdonk, I order and direct my said executor and trustee, for reasons best known to myself and uninfluenced by any one, to continue to hold in trust the sum of Five thousand dollars ($5000.00), the income of which shall be paid to Charles S. Onderdonk, Jr., for and during his life, without being subject to any anticipation, alienation or disposal by him or to any attachment or execution in any manner whatsoever, and at the death of the said Charles S. Onderdonk, Jr., to part and divide the said sum of Five thousand dollars ($5000) equally among any children that he may leave surviving, and should he leave no children surviving, then the said Five thousand dollars ($5000.00) shall be paid into my residuary estate.

"I also direct my said trustee to hold the sum of Five thousand dollars ($5000.00) in trust and to pay over the income thereof to Laura E. Onderdonk, for and during her life, without being subject to any anticipation, alienation or disposal by her or to any attachment or execution in any manner whatsoever, and at the death of the said Laura E. Onderdonk to part and divide the said sum of Five thousand dollars ($5000.00) equally among any children that she may leave surviving and should she leave no children surviving, then the said Five thousand dollars ($5000) shall be paid into my residuary estate.

"I also direct my said trustee to hold the sum of Five thousand dollars ($5000.00) in trust and to pay over the income thereof to Margaret Onderdonk, now Margaret Onderdonk Smith, for and during her life, without being subject to any anticipation, alienation or disposal by her or to any attachment or execution in any manner whatsoever, and at the death of the said Margaret Onderdonk Smith to part and divide the said sum of Five thousand dollars ($5000.00) equally among any children that she may leave surviving and should she leave no children surviving, then the said Five thousand dollars ($5000.00) shall be paid into my residuary estate; and the balance of the said share held in trust for my brother, Charles S. Onderdonk, I order and direct my said trustee to pay over to my residuary estate.

"I hereby ratify, confirm and republish my said last will and testament dated May 20, 1887, and the codicil dated January 4, 1893, and the codicil dated December 7, 1909, in every particular except wherein the same are hereby revoked, cancelled or altered as aforesaid."

At the audit of the account of the Pennsylvania Company for Insurances on Lives and Granting Annuities, trustee under the will of John P. Onderdonk, deceased, in account with the trust for Charles S. Onderdonk, who died March 21, 1924, it was contended that the children of Charles, under the will of John P. Onderdonk, were entitled to the entire income of the residue of the principal of their father's share after deducting the sum of $10,000, i. e., $5000 given in trust for the son of Charles and $5000 given in trust for his daughter. It was contended by Cynthia, testator's sister, and by F. Percy Vail, only child of testator's sister Mary, that they should be excluded. The Auditing Judge, Lamorelle, P. J., held that to exclude them amounted to disin-

Onderdonk's Estate.

heriting them by implication, saying: "These children are not to be disinherited by implication, and, while it is possible testator intended otherwise, yet we must gather his intent from the language used, and having said in so many words that the income was to become part of the residuary estate, it must be distributed as such among those entitled to residuary income, and they, therefore, take the share which their parent would have taken if living."

He awarded the residue of the share to the trustee to pay the income, one-fourth to George, one-fourth to Cynthia, one-fourth to Mary and one-fourth to the children of Charles.

F. Percy Vail, Cynthia and the children of Charles filed exceptions to this adjudication.

Mary O. Vail died May 5, 1924, and the trustee aforesaid thereupon filed its account of the trust for her. At the audit it was contended by the children of Charles and by F. Percy Vail that the words in the first codicil indicating the objects of the gift in remainder upon her decease of one-half the income of her share, i. e., "my surviving brothers and sisters," referred to persons answering that description at the death of the testator, not at the death of the life-tenant, Mary O. Vail. The Auditing Judge, however, held that the words referred to those answering the description at the death of the life-tenant, saying:

"George V. Onderdonk is alive; Cynthia O. Hunt is alive; Eudora D. Onderdonk died November 28, 1923; Charles S. Onderdonk died March 21, 1924, and Mary O. Vail died May 5, 1924. The three trusts for these three children have, therefore, terminated, or, treating the trusts as entirety, their interest in the trust estates ceased with and because of their deaths. The object of the first codicil was to deprive F. Percy Vail of any income in excess of one-half of that which his mother was receiving at the time of her death, and testator accomplished this in the first codicil by this provision: 'It is my will that one-half (½) of the share bequeathed to my said sister Mrs. Mary O. Vail, shall at her decease be divided equally among my surviving brothers and sisters, to be held in trust, the same as the original division of shares, and subject to the same conditions. The remaining one-half (½) of said share shall go to her child, to be held in trust as provided in said will and testament (not from any ill will or lack of affection is this, but because said child has money to come to him from other sources while my brothers and sisters have not).'

"To give the two children of Charles S. Onderdonk and the child of Mary O. Vail any part of the income would require the Auditing Judge to interpret the word 'surviving' in the above quoted paragraph of the codicil as meaning surviving at the date of the death of John P. Onderdonk, the original testator. It would result in giving Eudora D. Onderdonk an accrued share when she is dead, and having died without issue, her then share in the income has already been divided in an adjudication by Judge Gest among those he considered to be the persons properly entitled thereto. A part of this would go to Mary O. Vail and passing from her, her child would take one-half and others would get the other half, and this arithmetical absurdity would continue indefinitely. It would also result in giving Mary O. Vail a share. It is manifestly absurd to give her an accrued share of her own share because there can be no accrued share of and out of her original share. Therefore, the only sensible construction is to say that surviving brothers and sisters meant those who survive Mary O. Vail and whose shares were then held in trust for them. Cynthia O. Hunt and George V. Onderdonk each survived Mary O. Vail.

"The Auditing Judge is of opinion, and so rules, that they and they only take the remaining half of the income released by the death of Mary O. Vail. This one-half of the principal so released as aforesaid was to be held in trust the same as the original division of shares. That does not mean that where any of these trusts has terminated a new trust is to be created. It does mean that those who survived Mary O. Vail are to take their shares, not absolutely, but as an accrued share, and they are to be held in trust the same as in the original division and subject to the same conditions."

To this ruling exceptions were filed by Charles S. Onderdonk, Jr., and Margaret O. Hickey, surviving children of Charles S. Onderdonk, and by F. Percy Vail.

*Bevan A. Pennypacker* (of *Morgan, Lewis & Bockius*), for Cynthia O. Hunt.

*J. Edgar Butler*, for F. Percy Vail.

*Robt. T. McCracken*, for Charles S. Onderdonk, Jr., and Margaret O. Hickey.

GEST, J., Jan. 10, 1925.—John P. Onderdonk died on March 17, 1917, leaving two brothers, Charles and George, and three sisters, Eudora, Mary and Cynthia. By his will, dated May 20, 1887, he gave his residuary estate to his brothers and sisters, but directed that the shares of George and his sisters should be held in trust until the expiration of twenty-one years from the death of the survivor of them, the income to be paid, share and share alike, among George and his sisters, and in case of the death of either (any) of them leaving issue, the issue to be paid the share of income their parents would have taken if living; and in case of the death of either (any) of them without leaving issue or descendants him or her surviving (or leaving such that shall die before the period for the termination of the trust), the testator directed that the shares of principal, the income of which had been paid to her or them, should be divided equally among all the brothers and sisters then living and the issue of any that might be deceased, the issue taking their parents' share; the shares of George or his sisters or the descendants of either (any) of them that may be deceased to continue to be held in trust in aggregation with the other shares held for them upon the same trusts and with the same powers. And at the expiration of the period of twenty-one years after the death of the last survivor of them, the principal was directed to be divided among the descendants then living of George and his sisters *per stirpes*.

The construction of the will, however, is greatly complicated by the subsequent codicils, which, so far as they affect the questions now presented, will be stated as follows:

By codicil No. 1, dated Jan. 4, 1893, the testator directed that, upon the decease of Mary, one-half of her share should be divided among his surviving brothers and sisters, to be held in trust "the same as the original division of shares and subject to the same conditions," and that the remaining one-half of said shares should go to her child (F. Percy Vail), to be held in trust as provided in the will, giving as the reason the fact that F. Percy Vail has money to come to him from other sources.

By codicil No. 2, dated Dec. 7, 1909, the testator revoked and canceled the share given to George V. Onderdonk, and bequeathed to his executor $15,000 in trust under all the terms and conditions set forth in the will, to pay the income to George during his life, and on his death directed the said $15,000 to become part of the residuary estate.

By codicil No. 3, dated Nov. 10, 1914, the testator revoked and canceled the share of Charles and bequeathed the same to his executor in trust for Charles,

under and subject to all the terms and conditions contained in the will relative to George and his sisters, in trust to pay the income to Charles during his life, and on his death the testator directed the trustee, "for reasons best known to myself and uninfluenced by any one," to hold $5000 in trust, to pay the income to Charles S. Onderdonk, Jr., and on his death to divide the said $5000 among any children he might leave surviving, and should he leave no children surviving, "then the said $5000 shall be paid to my residuary estate." And he provided similar trusts of $5000 each for Laura E. Onderdonk (who, however, predeceased the testator without issue) and for Margaret O. Hickey, the said Charles, Jr., Laura and Margaret being children of Charles, the testator's brother. After providing for these trusts, the testator directed "the balance of said share held in trust for my brother, Charles S. Onderdonk, I order and direct my said trustee to pay over to my residuary estate."

In codicil No. 2 the testator ratified and confirmed his will and codicil No. 1 in every particular, except where the same thereby revoked, canceled or altered it, and in codicil No. 3 he ratified, confirmed and republished his will and the two prior codicils in every particular, except where the same were thereby revoked, canceled or altered.

At the audit of the executors' account, it was claimed on behalf of Charles that the effect of codicil No. 2 was to cause an intestacy as to the remainder of George's share after the reservation of $15,000 in trust for him, but the auditing judge (Gest, J.) held that this remainder went to augment the residue given in trust for the other beneficiaries, and which was awarded, one-fourth in trust for Charles, one-fourth in trust for Mary and one-half in trust for Eudora and Cynthia.

Exceptions were filed to this adjudication by Charles, but they were subsequently withdrawn.

After this, Eudora died without issue on July 3, 1923, and an account was filed by the trustee of the estate held in trust for Eudora and Cynthia. The auditing judge (Gest, J.) held that the trust continued, but that the income, formerly payable to Eudora and released by her death, became payable to Charles, George, Mary and Cynthia, the awards being made to the trustee in trust for those persons. Exceptions were filed by Charles, Cynthia and Mary to this adjudication, on the ground that George should have been excluded and the released income should have been awarded in trust for Charles, Cynthia and Mary. These exceptions were dismissed by the court in banc, opinion by Henderson, J.

Charles subsequently died on March 21, 1924, leaving two children, Charles S. Onderdonk, Jr., and Margaret O. Hickey, and Mary, sister of the testator, died July 3, 1924, leaving one child, F. Percy Vail. The trustee has filed its accounts of the estates held in trust for them as aforesaid.

By the adjudication of the account of the estate held in trust for Charles there was awarded $5000 in trust for his son Charles and $5000 in trust for his daughter, Margaret O. Hickey, and the residue was awarded to the trustee in trust, the income being awarded to the trustee in trust to pay one-fourth to George, one-fourth to Cynthia, one-fourth to Mary and one-fourth to the children of Charles. To this adjudication exceptions have been filed; first, by the two children of Charles, who claim that they are entitled to the entire income; second, by Cynthia, who claims that Charles's children should be excluded and that she is entitled to one-third instead of one-fourth; and, third, by F. Percy Vail, son of Mary, who claims also that Charles's children should be excluded, and, further, that the auditing judge should have defined with more exactness the share which he should take.

Mary O. Vail died on May 5, 1924, leaving issue one son, F. Percy Vail, and the trustee filed its account of the estate held in trust for her.

The auditing judge in his adjudication awarded one-half of the estate in trust for F. Percy Vail for life, and this award is admittedly correct. As to the other one-half, the auditing judge held that the words of the first codicil, "my surviving brothers and sisters," meant those who survived Mary O. Vail and whose shares were then held in trust for them; that is, Cynthia O. Hunt and George V. Onderdonk. To this adjudication exceptions were filed; first, by F. Percy Vail, claiming that he is entitled to one-third of the income of this one-half; and, second, by Charles S. Onderdonk, Jr., and Margaret O. Hickey, the two surviving children of Charles S. Onderdonk, claiming that they are entitled to one-third of said income.

The exceptions in both cases were argued with great ability by the learned counsel for the parties. We shall now proceed to dispose of them *seriatim*.

### The trust for Charles S. Onderdonk.

The will as originally written is clear enough, but the testamentary intention is rendered very obscure by the codicil, in connection with which it must be construed, and our careful study convinces us that no conclusion can be arrived at which is entirely free from doubt. The auditing judge ruled that the income released by the death of Charles S. Onderdonk, over and above that required by reason of the gift of the two legacies given in trust for the benefit of his two children, should be divided equally among the other four shares of the estate, and this he held upon the ground that the children of Charles are not to be disinherited by implication, and that, while it is possible the testator intended otherwise, yet, as he said in so many words that the income was to become a part of the residuary estate, it must be distributed as such; that is, among the four shares, viz., those given in trust for George, Cynthia, Mary and Charles, Eudora having died without issue to represent her share. While there is much to be said in support of this theory, and much was ably said by the learned counsel for the children of Charles, we are, on the whole, of the opinion that the testator intended to exclude them.

Let us suppose that the testator, in writing codicil No. 3, had intended to place the share of Charles in trust for his life, and that after his death his children should have the income, which is what they now contend they are entitled to, he need only have directed that Charles's share should be held in trust for his benefit "under and subject to all the terms and conditions set forth in the trusts contained in my will relative to my sisters and George V. Onderdonk," without more. But in this third codicil, which gives rise to the question, the testator makes a fundamental change in the provisions of his will, and the devolution of his estate on the death of Charles, when he there directed that the trusts of $5000 each be established for Charles's children. This change he says that he makes for "reasons best known to himself and uninfluenced by any one." Had he stated his reasons, our task of construction might have been easier. As it is, we can only infer them from the circumstances of the case, and it is the fact that the three children of Charles mentioned in the will, for whom he specially provided therein, were Charles's children by his first wife, from whom he had been divorced, and for whom he provided in terms of trust radically different from those relating to the general residuary estate. At any rate, he states what these children shall receive, *nominatim*, and there is nothing from which it can be inferred that he intended to give them any more. In addition to this, the testator, in this codicil No. 3, provided that Charles's share shall be held in trust, subject to all the terms

and conditions set forth in the trust contained in his will relative to his sisters and George V. Onderdonk; and we think that the special mention of his sisters and his brother George is indicative of an intention to exclude the children of Charles from any participation in the income which is the subject of these exceptions. We cannot believe that the testator intended these children to take the income from the special trusts of $5000 each and also the income of the residue from which these trust estates were carved, and our conclusion is supported by Crock's Estate, 231 Pa. 271, a very similar case.

Upon the whole, the exceptions of Charles S. Onderdonk, Jr., and Margaret O. Hickey are dismissed, and those filed by Cynthia O. Hunt and F. Percy Vail are sustained. A schedule of distribution in accordance with this opinion will be submitted to the auditing judge for his approval.

### Trust for Mary O. Vail.

The exceptions filed in this case relate, as above stated, to the construction given by the auditing judge to the words "my surviving brothers and sisters" in the first codicil to the will. Language such as this in a will almost invariably gives rise to question, and the meaning in which the testator used them can only be ascertained, if at all, by a study of the whole will, or the will and its alteration by a codicil, which is the case here. We are of opinion that the auditing judge was correct in his disposition of this question, and, for the reasons which he has given, we dismiss the exceptions filed by the children of Charles and by F. Percy Vail, and the adjudication is confirmed absolutely.